UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SAMAAD BISHOP,

                            Plaintiff,                          04 Civ. 9403 (PKC)

    -against-

TOYS "R" US-NY LLC, METRO ONE LOSS          MEMORANDUM
PREVENTION GROUP (GUARD DIVISION NY),        AND
INC., MICHAEL McDANIEL, in his Individual          ORDER
and Official Capacity as Security Guard, GREGORY
D. HOUSE, in his Individual and Official Capacity
as Sales and Service Manager, and JOSE NIEVES,
in his Individual and Official Capacity as Store Director,

                            Defendants.

-------------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

        Plaintiff alleges that, on July 3, 2004, after purchasing a doll set for his daughter at a Toys "R" Us store in the Bronx, a store security guard demanded that he present a receipt before exiting the store. He declined to do so, and was then allegedly detained and assaulted by store and security personnel until such time as plaintiff himself summoned the police. He presented his sales receipt to the police and was thereupon "freed" from the store. Plaintiff alleges that the motivating factor in his treatment at the hands of Toys "R" Us and its employees and agents was that he is African-American and/or the fact that the store was located in a predominantly African-American neighborhood. He has thus brought suit against defendants alleging violations of his civil rights under 42 U.S.C. §§ 1981, 1982, and 1983. He has also asserted a host of state law claims, ranging from false imprisonment to intentional infliction of emotional distress.

Defendants, after filing answers to plaintiff's amended complaint, have moved for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., and/or dismissal pursuant to Rule 12(h)(3), Fed. R. Civ. P. Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." For the reasons set forth below, defendants' motions are granted in part and denied in part.

Subject Matter Jurisdiction

Defendants contend that the Court lacks subject matter jurisdiction over this action because there is not complete diversity of citizenship between plaintiff and all defendants as required to invoke 28 U.S.C. § 1332. See, e.g., Handelsman v. Bedford Vill. Assocs., 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that all of the adverse parties in a suit . . . be completely diverse with regard to citizenship.") (internal quotation marks and citations omitted). Plaintiff alleges that he is a resident of New York, that defendant Toys "R" Us-NY, LLC ("Toys R Us") is "a corporation organized as Domestic Limited Liability Company existing, and doing business under the laws of the State of New York, with its principal place of business in Wayne, New Jersey and/or Paramus, New Jersey," and that defendant Metro One Loss Prevention Services Group (Guard Division NY) Inc. ("Metro One") is a Maryland corporation with its principal executive office situated in New York.[1] (Am. Cmplt. ¶¶ 13-14, 17) Plaintiff does not include anywhere in the amended complaint allegations regarding the citizenship of defendants House, Nieves or McDaniel.

---

[1] A plaintiff must allege the citizenship of all persons or entities who are members of a limited liability company. See Handelsman 213 F.3d at 51-52 (citing Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir.1998)); Strother v. Harte, 171 F. Supp. 2d 203, 205 (S.D.N.Y. 2001) ("For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members.").

Assuming that plaintiff means to allege that he is a citizen, and not merely a resident, of New York,[2] then the allegation that Metro One has its principal place of business in New York would defeat diversity jurisdiction. A corporation is deemed a citizen of both any state in which it is incorporated, and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, as discussed below, jurisdiction in this case is not dependent upon diversity of citizenship because there is a basis for federal question jurisdiction. 28 U.S.C. § 1331.

Defendants assert that since plaintiff has "failed to establish a violation of" the federal civil rights statutes under which he sues, no federal question is presented by his amended complaint. Of course, plaintiff need not "establish" anything in the context of a motion for judgment on the pleadings. Such motions are governed by the same standard as motions to dismiss pursuant to Rule 12(b)(6), and the Court must thus accept all of the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.), cert. denied, 513 U.S. 816 (1994). As such, plaintiff need only have complied with the liberal pleading standard of Rule 8, providing a "short, plain statement" of his entitlement to relief that "give[s] the defendant fair notice of what [his] claim is and the grounds upon which it rests." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted). Judgment on the pleadings should be granted only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' This standard is applied with particular strictness when the plaintiff complains of a civil rights violation." Sheppard, 18 F.3d at 150 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); additional citations and

---

[2] See, e.g., Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996) (allegation of individual plaintiffs' "residence" insufficient to assess question of diversity jurisdiction).

internal quotation marks omitted). Moreover, as plaintiff is proceeding pro se, his pleadings are to be read liberally, and interpreted to "raise the strongest arguments that they suggest." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (citations and internal quotation marks omitted).

Where a plaintiff brings claims premised on federal statutes, a district court has jurisdiction, and a motion to dismiss based on lack of subject matter jurisdiction is properly denied unless the allegations are "frivolous on their face," and the alleged federal question is "so plainly insubstantial as to be devoid of any merits and thus [does] not present[] any issue worthy of adjudication." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1189, 1190 (2d Cir. 1996) (citation and internal quotation marks omitted; alterations in original); see also Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997) ("[a] non-frivolous allegation of a cause of action under federal law suffices to invoke federal court jurisdiction") (citation omitted), cert. denied, 525 U.S. 823 (1998); George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 555 (2d Cir. 1977); Burrell v. State Farm Fire and Cas. Co., 2001 WL 797461 at *3 (S.D.N.Y. July 12, 2001). Plaintiff's allegations are not entirely frivolous. Thus, defendants' Rule 12(h)(3) motion is denied. I will, however, consider, in the context of defendants' 12(c) motion, whether plaintiff's amended complaint adequately states a claim under each of the applicable civil rights statutes, with both the notice pleading standard and the liberal reading afforded pro se complaints in mind.[3]

---

[3] Defendants attached to their motion papers materials outside the pleadings. The Court nevertheless declines to treat the instant motions as motions for summary judgment under Fed. R. Civ. P. 56. In the first instance, there is no indication in the record that defendants complied with Local Rule 12.1, which requires defendants to give notice to pro se litigants that a Rule 12 motion may be converted into a summary judgment motion. Moreover, by Order dated May 31, 2005, the Honorable Gabriel W. Gorenstein, United States Magistrate Judge, to whom this action was referred for general pretrial supervision, ordered that discovery be stayed pending decisions on the instant motions, and, thus, a summary judgment motion would be fairly

Section 1981 Claims

Section 1981(a) provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other." 42 U.S.C. § 1981(a).

To survive a motion to dismiss (or, in this case, a motion for judgment on the pleadings), a plaintiff bringing a claim under section 1981 must allege the following three elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). Defendants do not contest that plaintiff has adequately pled the first element, as the amended complaint clearly alleges that he is African-American. (Am. Cmplt. ¶ 30) They do, however, contend that plaintiff's complaint is insufficient with regard to its allegations of intentional discrimination and that it does not adequately allege that any discrimination concerned one of the statute's enumerated activities.

Courts are instructed to be "cautious of summary adjudication" when issues of discriminatory intent are involved. Hicks v. IBM, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (citing Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)). However, in pleading intentional racial discrimination, a plaintiff may not rely on "naked assertions" of discrimina-

---

met with a Rule 56(f) objection. The Court declines to convert these motions to summary judgment motions, over the objection of the plaintiff (see Pl. Br. at 2-3), prior to completion of discovery.

tion, but rather "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar Coll., 35 F.3d 709, 713-14 (2d Cir. 1994) (internal quotation marks and citations omitted); see also Obilo v. City Univ., 2003 WL 1809471 at *11 (E.D.N.Y. Apr. 7, 2003).

Here, plaintiff's complaint contains detailed allegations of specific conduct which, if proven at trial, could give rise to an inference of discrimination. Plaintiff alleges that he was "stopped and detained by Defendant McDaniel for no other reason than being an African American." (Am. Cmplt. ¶ 3) While this allegation alone might be too conclusory to support a section 1981 claim, plaintiff goes on to describe in detail the events that occurred as he attempted to leave the store. He alleges that he was "assaulted, battered, [and] visited with use of excessive force, as McDaniel physically forced [plaintiff] back into Toys 'R' Us store [sic] . . . ." (Am. Cmplt. ¶ 4) In fact, he alleges that McDaniel chased him "in a wild manner like a runaway freight train and blocked [plaintiff's] path with his body," and then "shoved" him back into the store. (Am. Cmplt. ¶ 36) He alleges that he repeatedly asked McDaniel, as well as defendant House, if he was free to leave the store, and was told that he was not. (Am. Cmplt. ¶¶ 4, 37, 40)

Plaintiff alleges that McDaniel explained his demand for plaintiff's receipt as based on a "store policy." He also alleges that McDaniel elaborated, saying, "This is the Bronx, not the suburbs and black people steal more than whites." (Am. Cmplt. ¶ 36) Plaintiff further alleges that, while he was still in the vicinity of the store exit, two white women carrying Toys "R" Us shopping bags exited the store, walking past McDaniel, and were not asked to show their receipts. (Am. Cmplt. ¶ 41)

At the pleading stage, such allegations are sufficient to support a section 1981 claim. Where plaintiffs "allege that they are African-Americans, describe defendants' actions in detail, and allege that defendants selected them for maltreatment 'solely because of their color,'" they have done all that is necessary to withstand a motion to dismiss. Phillip v. Univ. of Rochester, 316 F.3d 291, 298 (2d Cir. 2003). Plaintiff's allegations that he was subjected to racial epithets during the alleged detention and assault, and that white customers were not subjected to the same scrutiny on the way out of the store easily meet this standard. See, e.g., Straker v. Metro. Transit Auth., 2005 WL 3287445 at *2-*3 (E.D.N.Y. Dec. 5, 2005) (citing Phillip and denying motion to dismiss where plaintiff alleged he was African-American, described what defendants did to him, alleged such actions were taken because of racial animus, and alleged that white co-workers were treated differently); Hicks, 44 F. Supp. 2d at 598 (racially motivated comments sufficient to sustain a section 1981 claim against a 12(b)(6) motion); Perry v. Burger King Corp., 924 F. Supp. 548, 551-52 (S.D.N.Y. 1996) (allegations sufficient to sustain section 1981 claim where employees made "racially-based offensive comments" and plaintiff observed white patrons using restroom to which he was denied access).

Thus the question remains as to whether plaintiff has adequately pled that the alleged discrimination concerned one of the activities enumerated in section 1981(a). Plaintiff alleges that defendants' actions impaired both his right to "make and enforce contracts" and his right to "the full and equal benefit of all laws and proceedings for the security of persons and property." Defendants contend that plaintiff has failed to sufficiently plead impairment of either right.

Section 1981(b), which provides the definition of "make and enforce contracts" for purposes of the statute, was enacted as part of the Civil Rights Act of 1991, in re-

sponse to the Supreme Court's 1989 decision in Patterson v. McLean Credit Union, 491 U.S. 164 (1989).[4]  See Arguello v. Conoco, Inc., 330 F.3d 355, 359-60 (5th Cir.), cert. denied, 540 U.S. 1035 (2003).  In Patterson, prior to the enactment of section 1981(b), the Court construed "make and enforce contracts" as not encompassing conduct occurring after the formation of a contract.  Section 1981, the Court held, "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."  Id. at 179.

Congress amended section 1981 to include subsections (b) and (c), and thereby "to embrace all aspects of the contractual relationship, including contract terminations, [so] enlarg[ing] the category of conduct that is subject to § 1981 liability."  Rivers v. Roadway Express, Inc., 511 U.S. 298, 303 (1994).  Even so, courts that have addressed section 1981 claims in the context of retail transactions have held that after a purchase is completed, "there is no continuing contractual relationship.  Instead, the relationship is based on a single discrete transaction – the purchase of goods."  Arguello, 330 F.3d at 360 (footnote omitted); see also, e.g., Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 854 (8th Cir. 2001) ("While there is scant precedent, courts that have addressed the issue have concluded that once the purchase is completed, no contractual relationship remains.") (citations omitted), cert. denied, 535 U.S. 1017 (2002); Garrett v. Tandy Corp., 295 F.3d 94, 101 (1st Cir. 2002) (dismissing section 1981 claim where "the appellant fully consummated the contract while he was in the store (i.e., he completed the purchase of a book, a telephone, and some batteries) and thereafter retained the items he acquired"); Nevin v. Citibank, N.A., 107 F. Supp. 2d 333,

---

[4]  Section 1981(b) provides that, "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

349 (S.D.N.Y. 2000) (granting summary judgment on section 1981 claim where "[p]laintiff purchased everything she desired at both the Lord & Taylor and Charisma stores"); Rogers v. Elliott, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001) ("Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase.") (collecting cases); cf. Williams v. Cloverland Farms Dairy, Inc., 78 F. Supp. 2d 479, 485 (D. Md. 1999) (summary judgment denied where plaintiff was delayed in ability to complete purchase); Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1104-05 (10th Cir. 2001) (section 1981 claim may be based on interference with right to redeem a coupon for free merchandise received as a benefit of prior purchase), cert. denied, 534 U.S. 1131 (2002); Perry, 924 F. Supp. at 552 (section 1981 contract rights may be implicated by denial of bathroom use subsequent to purchase in a fast food restaurant).

Here, plaintiff alleges that the detention and assault occurred only after he had completed his purchase of the doll set and was attempting to exit the store. Thus, the contractual relationship between he and Toys "R" Us had ended, and none of defendants' actions interfered with his right to "make" or "enforce" that contract. Plaintiff seeks to escape this conclusion by arguing that his contractual rights were indeed implicated because his sales receipt noted the store's return policy, pursuant to which he was allegedly entitled to return his merchandise for a refund within 90 days of purchase. (Am. Cmplt. ¶ 60) He alleges that his potential exercise of his rights under the return policy, as well as his "future and potential opportunities to engage in contractual relations" with Toys "R" Us were "chilled," as the July 3, 2004 encounter has led him to fear that he may be subject to similar treatment should he return to the store in the future. (Am. Cmplt. ¶¶ 60-61)

However, "[a] claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." Morris v. Office Max, Inc., 89 F.3d 411, 414-15 (7th Cir. 1996) (citation omitted); see also Arguello, 330 F.3d at 358. "The possibility of returning some or all of the goods does not pass through this screen." Garrett, 295 F.3d at 102. While plaintiff alleges that he had the right to return the doll set, nowhere does he allege that he attempted to do so and his attempt was somehow thwarted. Indeed, he does not allege an intention to return the goods. True, he claims that because of defendants' actions on July 3, 2004, he would be loath to return to the store in the future, even had the doll set eventually proven to be defective or otherwise unsatisfactory. But, "[t]he naked assertion that a party might have elected to return a previously purchased product had he believed the environment to be more welcoming is simply too ephemeral a hook from which to hang a cause of action under 42 U.S.C. § 1981." Id. (citations omitted).

Plaintiff has not adequately pled a cause of action under section 1981 for interference with his right to "make and enforce contracts."

Apart from the "make and enforce contracts" provision, the statute also prohibits interference with the right "to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). Contrary to the holdings of some of its sister Circuits,[5] the Second Circuit has made clear that there is no state action requirement to invoke the equal benefit clause of the section. Phillip, 316 F.3d at 295-96; see also Chapman v. Higbee Co., 319 F.3d 825 (6th Cir. 2003), cert. denied, 542 U.S. 945 (2004). Rather,

---

[5] See e.g., Bilello v. Kum & Go, LLC, 374 F.3d 656, 661 (8th Cir. 2004); Jones v. Poindexter, 903 F.2d 1006, 1010 (4th Cir. 1990); Brown v. Philip Morris, Inc., 250 F.3d 789, 799 (3d Cir. 2001).

plaintiffs must 1) allege racial animus, which, as discussed above, plaintiff here has done; 2) identify a relevant "law or proceeding for the security of persons and property;" and 3) allege that defendants deprived them of the "full and equal benefit" thereof.  Phillip, 316 F.3d at 298.

The court in Phillip expressly avoided any "attempt to define the universe of laws and proceedings for the security of persons and property, believing this task best resolved case by case."  Id.  There have been few cases to date construing the "equal benefit" provision.  See Pierre v. J.C. Penney Co., 340 F. Supp. 2d 308, 310 (E.D.N.Y. 2004) ("Few cases in this circuit or elsewhere arise under the 'equal benefit' clause of § 1981.") (citation omitted).

Judge Dearie's opinion in Pierre deals with a factual situation similar to that presented by the instant action.  Plaintiff in that case alleged that after she left a J.C. Penney store in Queens without making a purchase, she was approached on the street by store security guards.  The guards accused her of shoplifting and forced her to return to the store, where she alleged that she was verbally and physically abused.  Though a search of the plaintiff revealed no stolen merchandise, she was detained for nearly three hours, during which time the guards sought to have her sign a false confession, which she refused to do.  The store never called the police or filed any form of complaint against plaintiff, though plaintiff filed a police complaint against the store.  Id. at 309.  Plaintiff brought suit alleging, inter alia, violation of her rights under the "equal benefit" clause of section 1981.  Id.

The plaintiff had not alleged a nexus to a state legal *proceeding*, but Judge Dearie went on to consider whether plaintiff had adequately alleged a nexus to a state *law* for the protection of persons and property.  Plaintiff's complaint in Pierre alleged that defendants

had violated, inter alia, state laws prohibiting assault, battery, and false imprisonment. Id. at 311-12. The court held that such laws qualified as those "intended for the security of persons." Id. at 312-13. Thus, defendants' motion to dismiss was denied.

Here, the facts alleged by plaintiff track the allegations in Pierre, though plaintiff did, in fact, make a purchase, and the duration of his detention was shorter. Plaintiff also alleges that defendants acted in violation of state laws intended for the security of persons and property, by, inter alia, their alleged false imprisonment, false arrest, assault, battery, trespass to chattels, and violations of state civil rights laws. Beyond the ipse dixit denial that they interfered with plaintiff's full and equal benefit rights, defendants fail entirely to address this aspect of plaintiff's section 1981 claims in their motion papers.

As noted, defendants' briefing on the "equal benefit" claim has been wholly inadequate. Under the liberal pleading standard espoused by the Supreme Court in Swierkiewicz, this Court cannot conclude that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Defendants' motion to dismiss plaintiff's section 1981 claim is denied to the extent he relies on the "equal benefit" clause. See Pierre, 340 F. Supp.2d at 312-13; see also Chapman, 319 F.3d at 833 (equal benefit claim stated based on store security guard's detention and search of customer); Lee v. Brown Group Retail, Inc., 2003 WL 22466187 at *4 (D. Kan. Oct. 6, 2003). The Court remains open to reconsideration of its preliminary assessment of the viability of the "equal benefit" claim after the parties have had an opportunity to conduct discovery, the purported nexus to state law is in sharper focus and defendants adequately brief the issue.

Section 1982 Claim

Section 1982 provides that, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Though the statute has been interpreted broadly, a plaintiff, to state a claim, must allege interference with some right involving real or personal property. See City of Memphis v. Greene, 451 U.S. 100, 121-22 (1981); Sumay v. New York Health & Hosp. Corp., 1998 WL 205345 at *7 (S.D.N.Y. Apr. 28, 1998). Plaintiff here, according to his opposition papers, apparently asserts that defendants interfered with his "fundamental right to travel freely within the United States of America," and that this constitutes deprivation of a property interest. (Pl. Br. at 19-20)

The right to interstate travel has long been recognized as fundamental,[6] but it does not constitute the sort of interest in real or personal property that is protected by section 1982. As discussed above in connection with plaintiff's section 1981 claims, he was not prevented from making any purchases at the store. Cf. Burgin v. Toys-R-Us-Nytex, Inc., 1999 WL 454302 at *4 (W.D.N.Y. June 30, 1999) (claim stated under section 1982 where cashier refused to complete sale, returned money already tendered, and had plaintiff escorted from store); Shen v. A & P Food Stores, 1995 WL 728416 at *2-*3 (E.D.N.Y. Nov. 21, 1995) (claim stated under section 1982 where employees refused to sell apple juice to plaintiffs). In retail cases alleging violations of both the contracts clause of section 1981 and section 1982, the two claims are often considered together, and the conclusion that plaintiff has not pled that

---

[6] "For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States." Passenger Cases, 7 How. (48 U.S.) 283, 492, 12 L. Ed. 702 (1849).

he was denied the right to enter into a contract counsels in favor of dismissal of the section 1982 claim. See, e.g., Garrett, 295 F.3d at 103.

Plaintiff relies heavily on the Second Circuit's decision in Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333 (2d Cir. 1974). In Olzman, the court held that a section 1982 claim could be premised on a rule change at a swim club, which would have had the effect of denying black children the right to use the club's facilities as guests. The court held that it was "reasonable to characterize the freedom of blacks to come and go as guests of a swim club member as sufficiently pertaining to a condition of property to be a right capable of being held under § 1982." Id. at 1339. The court recognized that status as a guest would not normally be considered a property right, but also acknowledged that when a black child was invited by a member, he attained certain rights to the "property" of the club, which rights were protectable. Id.

Here, it is doubtful that plaintiff could claim any interest in the "property" of the store, but even assuming he could, he has not alleged that he was denied access to the store. Even interpreting plaintiff's complaint liberally, he has failed to identify a cognizable interest in real or personal property. See, e.g., Murray v. Nat'l Broad. Co., 844 F.2d 988, 994-95 (2d Cir.) (no property interest in idea for a television series), cert. denied, 488 U.S. 955 (1988), and abrogated on other grounds by Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368 (2d Cir. 2000); Perry, 924 F. Supp. at 552 (no property interest in use of restaurant bathroom).

Defendants' motion for judgment on the pleadings as to plaintiff's section 1982 claim is granted.

Section 1983 Claims

Defendants contend that plaintiff has not adequately alleged the requisite state action under section 1983. "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." Ciambrello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (citation omitted).

For a private individual or entity to be deemed to have been acting under color of state law, the allegedly unconstitutional conduct of which plaintiff complains must be "fairly attributable to the state." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir.) (citation and internal quotation marks omitted), cert. denied, 539 U.S. 942 (2003). For this to be the case, there must be "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Id. (citations and internal quotation marks omitted). Such a nexus is found "where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state or is entwined with governmental policies." Id. at 313 (citation and internal quotation marks omitted).

The acts of a store security guard generally do not constitute state action for purposes of section 1983. See, e.g., Guiducci v. Kohl's Dept. Stores, 320 F. Supp. 2d 35, 37-38 (E.D.N.Y. 2004) (collecting cases). In his complaint, however, plaintiff alleges, upon information and belief, that defendant McDaniel has been sworn in as a "special patrolman" by the City and/or the State of New York, and was thus a "quasi-peace officer act[ing] under color of law." (Am. Cmplt. ¶ 83) A "special patrolman" may be appointed by the Commis-

sioner of the NYPD, "to do special duty at any place in the city," and "shall possess the powers and discharge all the duties of the [police] force, applicable to regular members of the force." NYC ADMIN. CODE § 14-106(c).

In Rojas v. Alexander's Dept. Store, Inc., 654 F. Supp. 856, 858 (E.D.N.Y. 1986), the court held that an allegation that a store security officer is also a "special patrolman" under the City Administrative Code[7] suffices to render him a "government official subject to section 1983 liability." Id. (citing Williams v. United States, 341 U.S. 97 (1951)); see also Temple v. Albert, 719 F. Supp. 265, 267 (S.D.N.Y. 1989) ("Special Patrolmen acting pursuant to a statutory grant of police power are sufficiently controlled by the state to be properly characterized as acting under color of state law.") (citations and internal quotation marks omitted); Harris v. Sec. Co. of 1370 Sixth Ave., 1996 WL 556927 at *2 (S.D.N.Y. Oct. 1, 1996) (same); Guiducci, 320 F. Supp. 2d at 37 (describing Rojas as "[t]he exception that proves the general rule," and noting that the Rojas guard's "status as a quasi-peace officer imputed state action and therefore implicated the Fourth Amendment and § 1983"). Defendants, in their opposition papers, dispute that McDaniel is a "special patrolman" within the meaning of the Administrative Code, and instead aver that he is "an active Deputy Sheriff of the City of New York." (Metro One Br. at 15)

While the plaintiff's allegation is thin, and may ultimately prove to be untrue, it is sufficient, at the pleading stage, to withstand McDaniel's motion to dismiss for lack of alleged state action. After the conclusion of discovery, which was previously stayed, see fn. 3, supra, McDaniel may, of course, move for summary judgment on plaintiff's remaining claims.

---

[7] The Rojas opinion refers to NYC ADMIN. CODE § 434a-7.0, the predecessor to the current § 14-106.

As regards the potential liability of defendants other than McDaniel under section 1983, defendants are correct that liability may not be found based on a theory of <u>respondeat</u> <u>superior</u>. <u>Nicholson v. Scoppetta</u>, 344 F.3d 154, 165 (2d Cir. 2003); <u>Whalen v. Allers</u>, 302 F. Supp. 2d 194, 202-03 (S.D.N.Y. 2003). However, plaintiff has alleged that the constitutional violations by McDaniel were part and parcel of a Toys "R" Us policy to select minorities for increased (and unjustified) scrutiny. (Am. Cmplt. ¶¶ 20-29) He also alleges that McDaniel's actions were carried out "at the direction of" both Toys "R" Us and Metro One and/or pursuant to contracts between Toys "R" Us and one or more of Metro One, McDaniel, House and Nieves. (Am. Cmplt. ¶ 79)

Assuming the truth of the allegation as to McDaniel's "special patrolman" status, plaintiff's complaint, liberally construed, can be said to include allegations that "the institution is the driving force behind the constitutional violation," <u>Temple</u>, 719 F. Supp. at 268 (citations omitted), and/or that the other defendants conspired with McDaniel to violate plaintiff's constitutional rights. <u>See</u> <u>Ciambrello</u>, 292 F.3d at 324-25 (section 1983 conspiracy requires pleading "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages").

Defendants' motions for judgment on the pleadings as to plaintiff's claim under section 1983 are denied.[8]

---

[8] Defendants also move for dismissal of claims that they "violated [plaintiff's] rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution." (Metro One Br. at 17; Toys "R" Us Br. at 13). Plaintiff's complaint, reasonably (and liberally) interpreted, does not assert separate causes of action based on these amendments, but rather alleges that these provisions provide the source of the rights of which plaintiff was deprived in violation of section 1983.

State Law Claims

Metro One and McDaniel move for judgment on the pleadings on plaintiff's state law claims on the ground that, assuming the Court dismisses each of plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c)(3); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 55-56 (2d Cir. 2004), cert. denied, __ U.S. __, 125 S. Ct. 2270 (May 16, 2005). Toys "R" Us, House, and Nieves do not expressly set forth any grounds for dismissal of the state claims. As federal claims remain extant in this action, there is a basis for supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(a).

Conclusion

For the reasons set forth above, defendants' motions are GRANTED IN PART AND DENIED IN PART.[9]


SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 8, 2006

---

[9] Plaintiff's Sixteenth Cause of Action, for defamation per se, was voluntarily withdrawn by plaintiff, and the notice of withdrawal was entered as an Order by Judge Gorenstein on May 13, 2005.