UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SAMAAD BISHOP, in propria persona,

                       Plaintiff,                  04 Civ. 9403 (PKC)

         -against-                    MEMORANDUM
                                                    AND ORDER

TOYS "R" US-NY, LLC; METRO ONE LOSS
PREVENTION GROUP (GUARD DIVISION
NY), INC.; MICHAEL MCDANIEL, in his
individual and professional capacity as security
guard; GREGORY D. HOUSE in his individual
and official capacity as sales and service manager;
and JOSE NIEVES in his individual and official
capacity as store director,

                       Defendants.
-------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

           Plaintiff Samaad Bishop, proceeding pro se, commenced this action on

November 30, 2004, alleging discrimination based on receipt-checking policies of Toys

"R" Us, as well as allegations of numerous common-law torts and violations of New

York law.  In a Memorandum and Order of February 8, 2006, I granted in part and denied

in part the defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(c),

Fed. R. Civ. P., and denied defendants' motion to dismiss for lack of subject matter

jurisdiction under Rule 12(h), Fed. R. Civ. P.  Bishop v. Toys "R" Us-NY LLC, 414 F.

Supp. 2d 385 (S.D.N.Y. 2006).  Discovery is now closed.

           A battery of motions is presently before the Court: (1) defendants Toys

"R" Us-NY, LLC, ("Toys "R" Us") Gregory House and Jose Nieves (collectively, the

"Toys "R" Us defendants") move for summary judgment dismissing Bishop's claims against them pursuant to Rule 56, Fed. R. Civ. P.;[1] (2) the Toys "R" Us defendants move for summary judgment in their favor on their cross-claims for indemnification and breach of contract against Metro One Loss Prevention Group (Guard Division NY, Inc.) ("Metro One") and Michael McDaniel (collectively, the "Metro One defendants"); (3) the Metro One defendants move for summary judgment dismissing all of Bishop's claims, as well as dismissing the cross-claims filed by the Toys "R" Us defendants; (4) Bishop moves to strike certain affirmative defenses asserted by the defendants; (5) Bishop moves for partial summary judgment in his favor on liability, and also moves for declaratory and injunctive relief; and (6) Bishop seeks the imposition of sanctions upon defense counsel.

Defendants' motions for summary judgment seeking to dismiss all federal claims are granted.  The Court declines to exercise supplemental jurisdiction over the state-law claims or the cross-claims of the Toys "R" Us defendants.  Plaintiff's motions are denied.

Local Rule 56.1

Local Rule 56.1 of the Southern District of New York requires a summary judgment movant to submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Rule 56.1(a).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly

---

[1] Pursuant to Local Rule 56.2, Bishop was informed of his responsibilities as a party opposing summary judgment under Rule 56(e)(2), Fed. R. Civ. P.

numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c). "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." Local Rule 56.1(d).

Local Rule 56.1 is of great value both to district courts and the parties. It prevents a wasteful and unguided scrutiny of the record. It also anchors a party's representations to identifiable evidence in an efficient and organized manner. A proper Rule 56.1 statement is a crucial component of a summary judgment submission.

The submissions of the pro se plaintiff in this case reflect a stronger grasp of the Local Rules than those of the defendants' retained counsel.[2] In opposition to Bishop's well crafted Local Rule 56.1 statement, the response of the Toys "R" Us defendants contains no citations to the record, and only unsupported admissions and denials. It is an unhelpful document that does not conform to the Local Rules. Similarly, Metro One's Local Rule 56.1 statement submitted in support of its motion contains no citations to the record, and was only later supplemented by a statement incorporating evidentiary citations. To the extent that assertions of fact in Bishop's Rule 56.1 statement are supported by citations to admissible evidence, they are deemed admitted by the Toys "R" Us defendants for the purposes of this motion. Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

---

[2] Although the plaintiff represents himself pro se, his submissions reflect a high degree of legal sophistication. While it plays no part in my analysis of the parties' motions, I note that the plaintiff has commenced at least two other section 1983 actions in this District against large retailers and store security officers. See Bishop v. Henry Modell & Co., et al., 08 Civ. 7541 (NRB) (S.D.N.Y.); Bishop v. Best Buy, Inc., et al., 08 Civ. 8427 (LBS) (S.D.N.Y.). The plaintiff also has applied for admission to the State Bar of California. (Bishop Aff. Exs. 21, 46 ¶ 4a.)

Background

On July 3, 2004, plaintiff Samaad Bishop, who is African American, visited a Toys "R" Us store at 970 White Plains Road in the Bronx.  (Pl. 56.1 ¶¶ 1, 3; TRU 56.1 ¶ 1.)  Bishop purchased a "Real Friends Family: La Familia La Famille" doll set for his six-year-old daughter.  (Pl. 56.1 ¶ 3; TRU 56.1 ¶ 15.)  As Bishop was exiting the store, defendant Michael McDaniel, a store security guard who also is African American, asked Bishop if he could review his sales receipt.  (Pl. 56.1 ¶ 4; TRU 56.1 ¶¶ 16-18.)  Bishop ignored McDaniel's request and proceeded toward the exit.  (Pl. 56.1 ¶ 5.)  McDaniel followed Bishop.  (Pl. 56.1 ¶ 7.)  In an incident report filed on July 30, 2004, McDaniel stated: "I asked the customer could he Please show me his receipt.  The customer ignore[d] me and continue[d] to walk out of the store.  I asked him again to see his receipt.  He finally stopped and told me that he did Not have to show me his receipt."  (Pl. 56.1 ¶ 17; Bishop Aff. Ex. 4.)  Bishop testified at his deposition that McDaniel told Bishop that he was not accused of stealing; that McDaniel "pushed" him back into the store; and that McDaniel held Bishop in the store against his will, at which point Bishop telephoned 911.  (Pl. 56.1 ¶¶ 6, 8, 13.)

At 11:29:09 a.m., defendant Gregory House, a store manager, arrived on the scene to discuss the situation with McDaniel.  (Pl. 56.1 ¶ 23; TRU 56.1 ¶ 21.)  House later reported the incident involving Bishop to another Toys "R" Us employee.  (Pl. 56.1 ¶ 24.)  In a written summary, House stated that he "explained to [Bishop] that all receipts are checked upon leaving the store, it was nothing personal.  He concluded he was being discriminated against and called 911 for the police."  (Bishop Aff. Ex. 5.)  Bishop acknowledges phoning 911 after he spoke to House.  (Pl. 56.1 ¶ 28.)  Officers from the

New York Police Department ("NYPD") arrived at Toys "R" Us and conferred with McDaniel.  (Pl. 56.1 ¶ 29.)  According to McDaniel's incident report, Bishop showed his receipt to the NYPD officers, who then showed the receipt to McDaniel.  (Pl. 56.1 ¶ 31.)  At that point, as Bishop describes it, he "was permitted to leave" the store.  (Pl. 56.1 ¶ 31.)  Later that day, Bishop visited the emergency room of the New York Presbyterian Hospital and complained of pain in his back, neck and shoulder area.  (Pl. 56.1 ¶ 32.)

Defendant McDaniel was a store security guard employed by defendant Metro One.  (Bishop Aff. Ex. 11.)  Pursuant to an agreement between Metro One and Toys "R" Us, Metro One supplied security services to various Toys "R" Us stores.  (Azzaretto Aff. Ex. J.)

The Plaintiff's Motion to Strike Defendants' Affirmative Defenses is Denied.

By notice of motion dated July 19, 2008, but filed with the Court on October 2, 2008, Bishop moves to strike various affirmative defenses asserted by the Toys "R" Us and Metro One defendants.  He also attacks various exhibits filed as part of the defendants' summary judgment motion papers.

A motion to strike an insufficient defense must be "made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading."  Rule 12(f)(2), Fed. R. Civ. P.  The defendants answered Bishop's Amended Complaint on June 14, 2006.  More than 800 days passed between the filing of their answers and Bishop's motion to strike.  This motion is untimely.  Additionally, striking portions of a pleading is a drastic remedy disfavored by the courts, and is sparingly granted.  See generally 5C Wright & Miller, Federal Practice &

Procedure § 1380 (3d ed. 2004); <u>Ali v. New York City Transit Authority</u>, 176 F.R.D. 68, 70 (E.D.N.Y. 1997).  Motions to strike on the basis of legal insufficiency are especially disfavored.  <u>William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.</u>, 744 F.2d 935, 939 (2d Cir. 1984), <u>vacated on other grounds</u>, 478 U.S. 1015 (1986).

While the Court retains authority to strike portions of the pleadings "on its own," Rule 12(f)(1), Fed. R. Civ. P., I decline to do so here.  Bishop's motion is targeted toward a defense asserted as to punitive damages, evidence concerning Bishop's lost earnings, and the statutory false-arrest defense codified at N.Y. General Business Law § 218.  Discovery in this case is closed, and the plaintiff has directed the Court to no prejudice suffered by the assertion of these affirmative defenses in the defendants' answers.

Plaintiff's Motion to Strike also attacks as insufficient two exhibits (Exhibits A and K of the Azzaretto Affirmation) relied upon by the Toys "R" Us defendants in their summary judgment papers.  Those exhibits will not be relied upon by the Court in deciding the summary judgment motion.

Plaintiff's motion to strike the defendants' affirmative defenses is denied.

<u>Summary Judgment Standard</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense,

demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant.  Rule 56(e)(2), Fed. R. Civ. P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c), Fed. R. Civ. P.  In

the absence of any disputed material fact, summary judgment is appropriate.  Id.

            "[W]hen the plaintiff proceeds pro se, as in this case, a court is obliged to

construe his pleadings liberally, particularly when they allege civil rights violations."

Jacobs v. Ramirez, 400 F .3d 105, 106 (2d Cir. 2005) (quoting Shakur v. Selsky, 391 F.3d

106, 113 (2d Cir. 2004)); see also Muntaqim v. Coombe, 366 F.3d 102, 105 n.3 (2d Cir.

2004) (pro se pleadings should be read "liberally and interpret[ed] . . . to raise the

strongest arguments that they suggest") (quoting McPherson v. Coombe, 174 F.3d 276,

280 (2d Cir. 1999)), vacated on other grounds, 449 F.3d 371 (2d Cir. 2006).

Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

requirements of summary judgment, and "a pro se party's 'bald assertion,' completely

unsupported by evidence, is not sufficient to overcome a motion for summary judgment."

Odom v. Keane, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (quoting Carey v.

Crescenzi, 923 F.2d 18, 21 (2d Cir. 1995)).  Specifically, mere "conclusory statements,

conjecture, or speculation by the party resisting the motion will not defeat summary

judgment."  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita,

475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (noting that summary judgment

may be granted if the evidence is "merely colorable" or "not significantly probative")

(citations omitted).  An opposing party's facts "must be material and of a substantial

nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences,

conjectural, speculative, nor merely suspicions."  Contemporary Mission, Inc. v. United

States Postal Service, 648 F.2d 97, 107 n.14 (2d Cir. 1981) (quotation marks omitted).

<u>Discussion</u>

I.    The Metro One Defendants' and Toys "R" Us Defendants'
Motions for Summary Judgment Are Granted Dismissing Bishop's
<u>Federal Statutory Claims.</u>

A.  <u>Plaintiff's Claim Pursuant to 42 U.S.C. § 1981 is Dismissed.</u>

Bishop asserts that McDaniel's request to review his store receipt was

discriminatory and directed toward him as an African American, whereas white Toys "R"

Us shoppers were not similarly asked to show their receipts upon exit.  He also contends

that Toys "R" Us had a discriminatory purpose in its selection of which stores would

implement a receipt-check policy.  He raises these claims via 42 U.S.C. § 1981.

I previously dismissed plaintiff's section 1981 claim insofar as it alleged

interference with his right to make and enforce a contract, but denied the motion to

dismiss to the extent that plaintiff alleged the defendants interfered with "the full and

equal benefit of all laws and proceedings for the security of persons and property."  414

F. Supp. 2d at 390-94.  I made note of the "wholly inadequate" quality of defendants'

briefs and the need for a clearer picture of relevant law and the underlying facts.  <u>Id.</u> at

394.  The defendants have moved for summary judgment dismissing Bishop's section

1981 claim, and Bishop has moved for summary judgment as to liability.

Section 1981(a) states in part:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory . . . to the full and equal benefit of all
> laws and proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every kind, and no other.

42 U.S.C. § 1981(a).  A section 1981 claim requires proof that (1) the plaintiff is a

member of a racial minority, (2) the defendants intended to discriminate on the basis of

race, and (3) the discrimination concerns one of the statute's enumerated activities.

Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000); see also Tolbert v. Queens

College, 242 F.3d 58, 69 (2d Cir. 2001) (intentional, racially motivated discrimination

must be a substantial or motivating factor in order for a defendant to be liable in a Section

1981 action).  In this Circuit, the equal benefit protections of section 1981(a) do not

require state action and can be asserted against private individuals.  Phillip v. University

of Rochester, 316 F.3d 291, 294-95 (2d Cir. 2003).

There is little case law interpreting the equal benefit provision of section

1981, and the Second Circuit has declined to give bright-line guidance as to what activity

falls within the equal benefit language.  Id. at 298 ("We do not here attempt to define the

universe of laws and proceedings for the security of persons and property, believing this

task best resolved case by case.").  Phillip "assume[ed] that Section 1981 requires a nexus

to state proceedings or laws," even though state action is not required.  Id.  It held that a

viable section 1981 claim arose when defendants "attempted to trigger a legal proceeding

against plaintiffs but would not have taken the same action had white students engaged in

the same conduct."  Id.

Judge Dearie in Pierre v. J.C. Penney Co., 340 F. Supp. 2d 308, 313

(E.D.N.Y. 2004), concluded that under Phillip, a section 1981 violation might occur

when a defendant injures "the security of persons and property" in violation of a state

law, and does so with a racially discriminatory purpose.  Pierre declined to dismiss at the

Rule 12 stage a plaintiff's claim that store security singled her out for inspection based on

a discriminatory basis.  Id. at 311-13.  In partially denying the defendants' motions under

Rule 12(c), I cited to the analysis in Pierre and noted plaintiff's allegations of false

imprisonment, false arrest, assault, battery, trespass to chattels, and violations of state

civil rights laws, which could liberally be construed under the Amended Complaint as

violations of state law committed with a discriminatory purpose.  Bishop, 414 F. Supp. 2d

at 394.

        To prevail, it is crucial that a plaintiff come forth with evidence of

discrimination, because this element distinguishes a section 1981 claim from a state-law

tort.  See Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) (evidence of

discriminatory intention essential to a section 1981 claim); Gant ex rel. Gant v.

Wallingford Board of Education, 195 F.3d 134, 139-40 (2d Cir. 1999) ("In order for

plaintiff to prevail on his claims for violation of the Fourteenth Amendment's Equal

Protection Clause and 42 U.S.C. § 1981, proof of racially discriminatory intent is

required.").  Identifying evidence of discriminatory intent requires an expansive approach

to the record, since "plaintiffs in discrimination suits often must rely on the cumulative

weight of circumstantial evidence," and a defendant "is unlikely to leave a 'smoking gun'

. . . ." Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).

        Here, the plaintiff's section 1981 claim is premised on discriminatory

application of a Toys "R" Us policy to check the receipts of departing customers.  To

succeed on a selective-enforcement claim, there must be some evidence of "'purposeful

and systematic discrimination'" in the form of specific instances when members of a

recognized group were "'singled . . . out for unlawful oppression in contrast to others

similarly situated.'"  Albert v. Carovano, 851 F.2d 561, 573 (2d Cir. 1988) (quoting

Birnbaum v. Trussell, 347 F.2d 86, 90 (2d Cir. 1965)) (ellipsis and emphasis in original).

Section 1981's prohibition against intentional discrimination may be proven by

circumstantial evidence sufficient to permit a reasonable inference that Toys "R" Us had

a discriminatory receipt-checking policy.  See Lizardo v. Denny's, Inc., 270 F.3d 94,

101-05 (2d Cir. 2001) (summarizing evidence in section 1981 action relating to allegedly

discriminatory policies in the seating of restaurant customers and upholding dismissal at

summary judgment stage).  If a plaintiff seeks to draw inferences of discrimination by

showing that he was similarly situated to other individuals to whom he compares himself,

the situations "need not be identical, but there should be a reasonably close resemblance

of facts and circumstances."  Id. at 101 (citing Graham v. Long Island Railroad, 230 F.3d

34, 40 (2d Cir. 2000)).  Hostile conduct may support an inference of discrimination, but

is not alone sufficient.  Lizardo, 270 F.3d at 102 ("Although mistreatment by defendants

is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-

based animus, it is certainly not sufficient to establish it.").

   It is useful to review cases in the summary judgment context in which the

Second Circuit has considered evidence of discriminatory motivation.  In Lizardo,

plaintiffs alleged that a defendant restaurant had a policy of seating white customers

ahead of Asian customers.  Id. at 101.  The Second Circuit noted that the white dining

parties seated before the plaintiffs were smaller in size than the plaintiffs' party of seven.

Id.  As a result, the plaintiffs were not "similarly situated" to the smaller dining parties

for the purpose of a section 1981 analysis.  Id. at 101-02.  Plaintiffs also claimed race-

based hostility on the part of the restaurant staff, premised upon the staff's failure to greet

them upon arrival, a staff member physically escorting a plaintiff from the restaurant, a

staff member shoving a plaintiff, and the failure of security guards to protect plaintiffs in

a parking lot brawl.  Id. at 102.  These incidents did not, without more, permit a

reasonable inference of racial animus, but more likely were "yet another example of the decline of civility."  Id.  Lizardo also noted that especially unruly conduct may distinguish a section 1981 plaintiff from those similar situated.  Id. at 104-05.

In Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991), the plaintiffs asserted that a series of law-enforcement searches in an apartment building were targeted only toward tenants who were Hispanic or had Hispanic surnames.  The district court granted defendants' summary judgment motion, and the Second Circuit affirmed, noting that plaintiffs submitted no evidence in support of discriminatory intent – only an attorney's affidavit positing that this "may be" the case.  Id.  Statements by law-enforcement officers concerning economic circumstances and the prevalence of roaches were insufficient to establish discrimination.  Id.

Defendants contend that Toys "R" Us had in place a legitimate, non-discriminatory policy as to exit greeters and receipt-checking.  Toys "R" Us also maintained a written policy that "the Exit Greeter must not verify the receipts of some guests and not others."  (Bishop Aff. Ex. 8.)  According to Victor DeBlassi, regional director for loss prevention at Toys "R" Us, receipt-checking policies were implemented at various stores based on crime statistics, budget information, and "shrinkage" – the store's loss of products between manufacturing and sale.  (DeBlassi Dep. at 53, 101, 102, 119, attached at Azzaretto Aff. Ex. Q.)  DeBlassi stated that there was no fixed threshold for deciding which store locations would be subject to a receipt-checking policy, but that race played no part in determining where to impose such a policy.  (DeBlassi Dep. at 101-02, 119.)  In addition, defendant McDaniel, who is African American, testified that he never uttered disparaging remarks based on race, and that he inspected the plaintiff's

receipt along with the receipts of other individuals who passed him carrying merchandise. (McDaniel Dep. at 88-90, 129-130, <u>attached at</u> Azzaretto Aff. Ex P.)

Bishop contends that the store he visited specifically targets black customers. All parties rely on a surveillance video depicting the events surrounding Bishop's store exit. Defendants contend that the video shows that receipt inspections were non-discriminatory, while the plaintiff asserts that the video shows white patrons were not required to show receipts. The plaintiff also asserts that the video does not depict the assault he alleges to have suffered at McDaniel's hands, and without disputing the video's accuracy or completeness, he appears to question its origins inasmuch as he argues the surveillance footage in his possession reflects a different time stamp.[3]  (Pl. 56.1 in Opp. to TRU ¶¶ 23-24.)  Bishop contends that the video shows white patrons exiting the store without showing their receipts, and cites to a variety of moments where white customers were allegedly permitted to pass through without showing their receipts. (Bishop Mem. in Opp. to TRU at 16 n.63.)

The defendants failed to submit any affidavit or other evidence authenticating this video.  "Authentication is not only necessary for entry into evidence at trial; it is a precondition to consideration of documentary evidence on summary judgment."  <u>Jay Dees Inc. v. Defense Technology Systems, Inc.</u>, 2008 WL 4501652, at *6 (S.D.N.Y. Sept. 30, 2008).  The plaintiff, however, affirms that the video is "[a] true and correct copy of Toys "R" Us video surveillance images of July 03, 2004, on

---

[3] A comparison of the video footage reveals no apparent variance between the time stamps in the video submitted by Bishop and the video submitted by the Toys "R" Us defendants.  <u>Compare</u> Azzaretto Aff. Ex. H <u>with</u> Bishop Aff. Ex. 9.  In any event, plaintiff does not contend that there is separate surveillance footage of his exit from Toys "R" Us that more fully depicts the incident, only that the time stamps differ.

DVD . . . ."  (Bishop Aff. ¶ 17.)  No party challenges the authenticity of the video, and the relevant individuals are readily identifiable based on the description of events contained in the parties' papers.  Paragraph 17 of Bishop's affidavit and the parties' agreement on its reliability is sufficient to establish the video's authenticity.  Jay Dees, 2008 WL 4501652, at *6 (noting trial court's broad discretion in authentication determinations).

I have reviewed the video in full, mindful that at the summary judgment stage, it is the Court's responsibility to identify triable issues of fact and not to act as a factfinder, while drawing all reasonable inferences in favor of the non-moving party.  See Allen, 64 F.3d at 79.  In the video, Bishop wears a light blue shirt, McDaniel wears a yellow short-sleeved shirt, and House wears a red short-sleeved shirt.  (Azzaretto Aff. Ex. H; Pl. Opp. Mem. to Metro One at 9 (describing McDaniel as "wearing yellow shirt with a bald head.")) At approximately the 10:56:22 frame, Bishop passes McDaniel, McDaniel follows him, and the two walk off camera for less than 12 seconds, at which point Bishop returns to the screen already in the process of dialing a number on a mobile phone.  (Azzaretto Aff. Ex. H.)

House first appears in the video at approximately 11:02:27.  (Id.)  For long periods, the video depicts Bishop speaking into his phone and addressing McDaniel and House.  (Id.)  The footage depicts no physical aggression, and McDaniel appears to request receipts from each exiting customer regardless of race.  (Id.)  McDaniel occasionally pauses to drink a bottled beverage.  (Id.)

Throughout the video, customers stop briefly, show their receipts to

McDaniel, and proceed through the exit.  (<u>Id.</u>)  Patrons exiting without merchandise are

not stopped, and they pass McDaniel without interaction.  (<u>Id.</u>)  While it is not always

apparent from the footage whether exiting customers are carrying a Toys "R" Us

shopping bag or a personal effect such as a purse, no reasonable trier of fact could

identify a discernable pattern of receipt inspection or non-inspection based on race.

       At approximately 11:17:20, NYPD officers arrive to the store's exit area.

(<u>Id.</u>)  Bishop chats with various of the three officers while McDaniel looks on and

customers continue to exit the store.  (<u>Id.</u>)  At approximately 11:18:06, Bishop passes his

receipt to an officer, who passes it to McDaniel.  (<u>Id.</u>)  Bishop departs the store at

11:19:18, with receipt and shopping bag in hand.  (<u>Id.</u>)

       Drawing all reasonable inferences in plaintiff's favor, the video would not

permit a reasonable fact-finder to conclude that McDaniel did anything other than check

the receipts of customers exiting with merchandise, regardless of race.  It does not

support an inference that defendants were discriminatory in their receipt-checking

activities.  No reasonable juror could view the video as evidence supporting intentional

discrimination by the defendants, and it raises no triable issue of fact as to discriminatory

treatment among those similarly situated.  <u>Albert</u>, 851 F.2d at 573.

       Plaintiff also cites to expert testimony of Julian Ellison.  Ellison holds a

Ph.D. in economics from Columbia University and is identified as having background as

a government analyst and college instructor.  (Ellison Dec. Curriculum Vitae.)  Ellison

reports that in 2004, Toys "R" Us stores that implemented receipt-checking policies

suffered average pilferage losses of $48,440 annually, while stores without receipt

policies suffered average pilferage losses of $26,561.  (Ellison Dec. ¶ 6.)  However,

Ellison noted that some stores without receipt-checking policies incurred large losses – as

high as $60,828 annually.  (Id.)  Such a wide variation, Ellison concluded, showed that

pilferage loss was not the principal factor in establishing a receipt-checking policy.  (Id.)

The report also stated that in police precincts with rising larceny rates, "the expectation of

a receipt policy declines" for the Toys "R" Us store located therein.  (Id. ¶ 7.)  The report

concludes by stating that "a receipts policy in which Blacks are singled out for

investigation by store guards has no empirical basis, and implies that a more tenable

explanation has as a basis the stereotyping of Blacks as inherently more criminal than

non-Blacks, that is to say the policy has its basis in racial discrimination against Blacks."

(Id. ¶ 8.)

Construed in the light most favorable to Bishop as the non-moving party,

Ellison's assertions do not raise a triable issue of fact concerning the discriminatory

implementation of a receipt-checking policy.  Ellison's report recognizes that, on

average, stores with receipt-checking policies had been subject to much higher rates of

pilferage than those that did not, but the report emphasizes the existence of outliers.  (Id.

¶ 6.)  The report's conclusions regarding the receipt policy's effects on African

Americans are carefully worded: it concludes that a policy that targets blacks is

discriminatory and "has no empirical basis," but it stops somewhere short of asserting

that the Toys "R" Us policy was, itself, targeted toward blacks.  (Id. ¶ 8.)

The evidence offered by the plaintiff is insufficient to raise a reasonable

inference of discriminatory purpose on the part of the defendants.  Plaintiff cites to other

evidence in opposition to the defendants' motion, including an alleged comment by

McDaniel that "Blacks steal more than Whites," McDaniel's statement in deposition that

he did not check the sales receipts of "every single customer," Bishop's contention that

McDaniel uttered a racial epithet, and DeBlassi's inability at his deposition to recall

crime statistics for various counties in the New York City metropolitan region.  (Bishop

Mem. in Opp. to TRU at 16-21.)  McDaniel, who is African American, disputes Bishop's

contention that he uttered offensive comments, but assuming for the sake of this motion

the correctness of Bishop's account, the remarks are insufficient to support an inference

of a discriminatory selective-enforcement policy.  Those remarks would show some

evidence of hostility on the part of a guard, not disparate treatment among those similarly

situated, and animus or incivility alone is insufficient to raise an inference of

discriminatory treatment.  Lizardo, 270 F.3d at 101.

   The defendants have set forth evidence that Toys "R" Us employed a race-

neutral receipt-checking policy.  The plaintiff has failed to come forward with admissible

evidence that would permit a reasonable jury to conclude that the policy or the manner in

which it was implemented was intentionally discriminatory.  Bishop's section 1981 claim

is dismissed.


   B.  Plaintiff's Claim Pursuant to 42 U.S.C. § 1983 is Dismissed.

   Bishop also alleges that McDaniel falsely arrested and imprisoned him and

thereby violated his constitutional rights to due process, equal protection under the law,

interstate travel and protection from unlawful search and seizure.  He also alleges that the

other defendants conspired with McDaniel to deprive him of his constitutional rights.  "In

order to state a claim under § 1983, a plaintiff must allege that he was injured by either a

state actor or a private party acting under color of state law." Ciambriello v. County of

Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (citation omitted).  For a private individual or

entity to act under color of state law, the allegedly unconstitutional conduct of which

plaintiff complains must be "'fairly attributable to the state.'"  Tancredi v. Metro. Life

Ins. Co., 316 F.3d 308, 312 (2d Cir.), cert. denied, 539 U.S. 942 (2003).  There must be

"such a close nexus between the State and the challenged action that seemingly private

behavior may be fairly treated as that of the State itself."  Id. (citations and internal

quotation marks omitted).  Such a nexus is found "where the state exercises coercive

power over, is entwined in [the] management or control of, or provides significant

encouragement, either overt or covert to, a private actor, or where the private actor

operates as a willful participant in joint activity with the State or its agents, is controlled

by an agency of the State, has been delegated a public function by the state or is entwined

with governmental policies."  Id. at 313 (citation and internal quotation marks omitted).

          The acts of a store security guard generally do not constitute state action

for purposes of section 1983.  See, e.g., Guiducci v. Kohl's Dept. Stores, 320 F. Supp. 2d

35, 37-38 (E.D.N.Y. 2004) (collecting cases).  Generally, guards are state actors in two

circumstances:  "'First, private guards may be sued when they are given the authority of

state law.  Second, security guards are considered to be acting under state law if they are

willful participants in the joint activity of the State or its agents.'"  Id. at 37 (quoting

Josey v. Filene's, Inc., 187 F. Supp. 2d 9, 16 (D. Conn. 2002)).  "A mere general

understanding that security guards can call the police for assistance is insufficient to

establish state action."  Fletcher v. Wal-Mart Stores, Inc., 2006 WL 2521187, at *3

(S.D.N.Y. Aug. 28, 2006).  In Rojas v. Alexander's Department Store, Inc., 654 F. Supp.

856, 858 (E.D.N.Y. 1986), the court held that an allegation that a store security officer is also a "special patrolman" under the City Administrative Code suffices to render him a "government official subject to section 1983 liability." Id. (citing Williams v. United States, 341 U.S. 97 (1951)). Guiducci described Rojas as "[t]he exception that proves the general rule," and noted that the Rojas guard's "status as a quasi-peace officer imputed state action and therefore implicated the Fourth Amendment and § 1983." 320 F. Supp. 2d at 37. See also Royster v. Rochdale Village Co-op, 2008 WL 1787681, at *2 (E.D.N.Y. Apr. 17, 2008) ("The activities of private security guards constitute state action only in very limited circumstances: where the private guards are given the authority of state law or when the private guards are willful participants in some joint activity of the State or its agents."); Prowisor v. Bon-Ton, Inc., 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) (store security officer's call to police "does not constitute state action absent special circumstances, i.e., guards sworn as 'special patrolmen' or cooperative interactions of guards and police"), aff'd, 232 Fed. Appx. 26 (2d Cir. 2007); Harris v. Security Co. of 1370 Sixth Ave., 1996 WL 556927 at *2 (S.D.N.Y. Oct. 1, 1996) ("As a general rule, it 'is well settled that the acts of a private security guard hired by a store ... do not constitute state action under § 1983.'") (quoting Brooks v. Santiago, 1994 WL 529864, at *1 (S.D.N.Y. Nov. 15, 1993)).

In denying defendants' motion to dismiss, I noted that the Amended Complaint alleged McDaniel to be a "special patrolman," and that while plaintiff's allegations were "thin," they were sufficient to survive at the pleading stage. 414 F. Supp. 2d at 396-97. I also concluded that the amended complaint set forth allegations sufficient to state a claim of conspiracy between McDaniel (as a potential state actor) and

the other defendants to deprive plaintiff of his constitutional rights.  Id. at 397.

 With discovery now closed and drawing all reasonable inferences in the plaintiff's favor, no reasonable jury, properly instructed, could conclude that McDaniel was a state actor.  It is true that on October 4, 1993, more than a decade before he asked to review Bishop's receipt, McDaniel was appointed a deputy of the City of New York, and was assigned badge number 330.  (Bishop Dec. Ex. 22, 23.)  McDaniel took an oath as sheriff's deputy.  (Bishop Dec. Ex. 24.)  In support of his contention that McDaniel is a state actor, plaintiff cites to New York City Department of Finance Policy and Procedure, "Outside Employment and Other Activities," section 100-1(4)(c), which states in full:

> An off-duty employee employed in the private security field does not, by virtue of that employment, relinquish the law enforcement power and authority conferred by the laws of the State of New York.  However, when such an employee effects an arrest in furtherance of the private employer's interest, he is acting solely on behalf of that employer, not in discharge of his duties as a City employee.

(Bishop Aff. Ex. 7; emphasis added.)  Plaintiff emphasizes the first sentence of this provision, but the highlighted language unambiguously states that an off-duty deputy sheriff acts "solely" on behalf of a private employer's interests.  (Id.)  That provision is directed toward arrests, which is highly relevant to a section 1983 claim alleging false arrest and imprisonment.  Other provisions of these same guidelines distinguish an officer's official capacity from actions taken on behalf of a private employer.  See id. section 100-1(4)(a) (peace officers forbidden from wearing uniforms or shield in off-duty employment); section 100-1(4)(b) (no legal representation provided for officers when allegations involve work in private security employment, as opposed to acts "within the scope of their employment and in discharge of official duties"); section 100-1(4)(d)

(forbidding crime investigations on behalf of private employers, absent exigencies);

section 100-1(4)(f) (overtime pay not provided for court time related to work for private

employees).

   Defendants have come forth with evidence sufficient to establish that any

"arrest" was made "solely on behalf of" a private employer.  McDaniel was an employee

of defendant Metro One, which had an agreement to provide security for Toys "R" Us.

(Azzaretto Aff. Ex. J.)  Metro One provided "security guard services" to Toys "R" Us in

order "to deter certain risks of loss and to detect the occurrence of such losses . . . ."  (Id.

Recitals)  Metro One was a private, independent contractor, not an arm of the state, and it

pledged to issue its own uniforms and badges to security guards working at Toys "R" Us.

(Id. ¶¶ 4(B), 5(a).)  It promised to screen all guards that it provided.  (Id. ¶ 10.)  Metro

One and Toys "R" Us agreed to "maintain good working relationships with the police" in

jurisdictions where Metro One was contracted to provide store security (Id. ¶ 13), but

they were not otherwise entwined with public authorities.  Defendants also rely upon the

absence of evidence that McDaniel acted under the color of state law, including

deposition testimony from the plaintiff acknowledging that McDaniel never described

himself as a sheriff officer or police officer, never telephoned law enforcement, and never

displayed a badge.  (Bishop Dep. at 142-43.)  In response and after full discovery, the

plaintiff has failed to come forward with evidence sufficient to permit a reasonable jury

to conclude that he was a state actor.  Bishop points to no evidence that could be fairly

read as giving McDaniel or Metro One the authority of the state in their conduct at Toys

"R" Us.

   Based on this record, McDaniel's undisputed affiliation with the New

York City sheriff's office did not impart upon him authority under the color of state law when he acted as a private Metro One security guard at Toys "R" Us.  Because state action is a threshold requirement for a section 1983 claim, and because there are no triable issues of fact supporting a classification of McDaniel as a state actor, plaintiff's section 1983 claim is dismissed.  Similarly, the absence of state action disposes of plaintiff's allegation of conspiracy to violate section 1983, and plaintiff's section 1983 claims against the other defendants are dismissed.

In granting summary judgment to defendants, I have considered evidence and arguments proffered by plaintiff, both in opposition to defendants' motions and in support of his own motion for summary judgment.  Plaintiff's motion for summary judgment is denied.

Plaintiff's Request for Sanctions is Denied.

Bishop contends that the failure of the Toys "R" Us defendants to comply with the terms of Local Rule 56.1 in their opposition to his motion for summary judgment should result in sanctions.  In a letter dated September 25, 2008, Bishop wrote the Court requesting a pre-motion conference as to various proposed sanctions against defense counsel.  He proposed a motion to strike the Local Rule 56.1 opposition statement of Toys "R" Us; to strike an affidavit submitted by defendants as to the time stamping of the surveillance video; and to strike fact assertions made by the defendants as to Bishop's litigation history, as well as portions of the testimony of McDaniel asserting that Bishop referred to him using a racial epithet.  In an order of September 26, 2008 denying the pre-motion conference, I advised plaintiff that the Court would consider his contentions as

part of the various other pending motions in this case.  (Docket Entry # 134.)  A flurry of supplemental letters followed from the plaintiff, including three different letters dated October 23, 2008, one letter of October 30, two of October 31, and one each on November 3 and 5, 2008.

I have previously addressed the flaws of the Local Rule 56.1 Statement submitted by Toys "R" Us in opposition to the plaintiff's motion for summary judgment. The other matters raised by the plaintiff go toward the existence of issues of material fact in the parties' summary judgment motions, and not to sanctionable conduct pursuant to Rule 11, Fed. R. Civ. P.  See generally Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) (Rule 11 sanctions are to be based on objective unreasonableness of counsel). The evidence that apparently concerned the plaintiff was not material to any of my decisions.  I have considered plaintiff's arguments in favor of sanctions, and find them to be insufficient to warrant imposition of sanctions of any kind in this case.


This Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims, Which Are Dismissed.

The seventeen remaining claims in this action arise under the laws of the State of New York.  These claims are for false imprisonment (Count 4), false arrest (Count 5), assault (Count 6), battery (Count 7), trespass to chattels (Count 8), excessive force (Count 9), violation of 19 N.Y.C.R.R. § 170.1(2)(e) and General Business Law § 89-g (Count 10), violation of the Security Guard Act (Count 11), violation of New York Executive Law § 296 (Count 12), violation of New York Civil Rights Law § 40 (Count 13), violation of New York City Administrative Code (Count 14), violation of General Business Law § 218 (Count 15), negligent hiring (Count 16), negligent supervision

(Count 17), breach of contract (Count 18), intentional infliction of extreme emotional distress (Count 19), and negligent infliction of emotional distress (Count 21).  In addition, the Toys "R" Us and Metro One defendants have moved for summary judgment on the Toys "R" Us cross-claims for contractual and common-law indemnification and for breach of contract.  Whether through inadvertence or strategic choice, the defendants have not moved for summary judgment dismissing Counts 9, 14, 18, or 21, thus inviting a trial on at least four state-law causes of action.

Section 1367 of title 28 of the United States Code governs the Court's exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  Section 1367(c)(3) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  Although section 1367(c)(3) is couched in permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless."  Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  In Valencia, the Second Circuit held that the district court abused its discretion by exercising jurisdiction over a state-law claim following summary judgment dismissing the plaintiffs' federal claims.  Id. at 307-08.  At the time plaintiffs conceded an absence of viable federal claims, "most of the anticipated pretrial discovery had been completed," no judicial opinions had issued, and the case was not yet trial-ready.  Id. at

306.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id. at 305.  In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity – the "Cohill factors."  Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

The Second Circuit has deemed it proper to retain supplemental jurisdiction over state-law claims in actions that implicate preemption issues, state-law claims that remain when federal claims are voluntarily dismissed days before the scheduled start of trial, and state-law claims that remain after the district court considered three dispositive motions.  Valencia, 316 F.3d at 306.  See also Arthur Glick Truck Sales, Inc. v. H.O. Penn Machinery Co., 332 F. Supp. 2d 584, 586 (S.D.N.Y. 2004) (plaintiff's voluntary dismissal of single federal claim warranted remand to state court for lack of supplemental jurisdiction over the remaining state-law claims); Den Hollander v. Flash Dancers Topless Club, 340 F. Supp. 2d 453, 463 (S.D.N.Y. 2004) (dismissing state-law claims following dismissal of RICO claim, and noting that "[w]hile district courts are capable and are bound to apply the state law to claims, '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law'") (quoting New York v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650, 670 (W.D.N.Y. 2003)).

Considering the status of the proceedings and the totality of the record,

this Court declines to exercise supplemental jurisdiction over the remaining claims.

While this case was filed more than four years ago, and this Memorandum and Order is

issued in response to the second ostensibly dispositive motion in this case, all remaining

claims involve application and analysis of New York's constitution, statutes and common

law.  Similarly, the indemnification and breach of contract cross-claims of the Toys "R"

Us defendants do not implicate federal law.  State issues wholly predominate.  See United

Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27 (1966).  Convenience, fairness

and comity favor the state court resolution of the seventeen remaining state-law claims

and the Toys "R" Us defendants' cross-claims.  As to judicial economy, while I am

hesitant to prolong what has already been a protracted and aggressively litigated dispute,

I note that the discovery conducted under the Court's supervision should be fully

satisfactory for all remaining claims, and that briefing on the state-law counts appears

readily available for revision and submission to another tribunal.

        Moreover, the defendants previously urged me to dismiss the plaintiff's

claims for lack of supplemental jurisdiction, but because plaintiff's federal claims

remained viable after defendants' Rule 12 motions, I declined to do so.  See Bishop, 414

F. Supp. 2d at 397.  No federal claims remain.  I decline to exercise supplemental

jurisdiction over the seventeen remaining counts arising under New York state law.

Counts four through seventeen therefore are dismissed without prejudice.


CONCLUSION

        The motion for summary judgment of the Toys "R" Us defendants is

granted to the extent that plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 are

dismissed with prejudice. It is denied to the extent that it seeks relief on cross-claims filed by the Toys "R" Us defendants. Plaintiff's remaining claims and the cross-claims of Toys "R" Us are dismissed because the Court declines to exercise supplemental jurisdiction. (Docket # 101.)

The motion for summary judgment of the Metro One defendants is granted to the extent that plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 are dismissed with prejudice. Plaintiff's remaining claims and the cross-claims of Toys "R" Us are dismissed because the Court declines to exercise supplemental jurisdiction. (Docket # 106.)

Plaintiff's motion to strike affirmative defenses is denied. (Docket # 136.)

Plaintiff's motion for partial summary judgment on liability and declaratory and injunctive relief is denied. (Docket # 144.)

Plaintiff's request for sanctions is denied.

The Clerk shall enter judgment in accordance with the foregoing.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 19, 2009